Evelyn SEBESTA, Appellant,

v.

Anton STAVINOHA et al., Appellees.

No. 17408.

Court of Civil Appeals of Texas,
(Houston 1st Dist.).

Sept. 27, 1979.

Rehearing Denied Nov. 1, 1979.

Les Fleming, Houston, for appellant.

Conner, Odom & Clover, C. E. Clover, Jr., Sealy, for appellees.

Before WARREN, PEDEN and EVANS, JJ.

WARREN, Justice.

Evelyn Sebesta appeals from a judgment of the probate court which set aside and declared void a previous order admitting the will of Celestina Stavinoha to probate. The testatrix was the grandmother of one of appellees and the mother of the remaining parties.

The issues on appeal are 1) whether there was evidence to support the jury's finding that the testatrix did not have testamentary capacity on the date the will was allegedly executed, 2) whether testimony and exhibits concerning savings certificates should have been admitted into evidence and 3) whether testimony of nursing home employees was too remote and inadmissible.

Appellant's first five points of error assail the evidence supporting the verdict.

Since appellant's other points of error complain of the trial court's admitting certain evidence, the latter points will be considered first.

Appellant contends the trial court erred in allowing a bank employee to testify about certain savings certificates and admitting these savings certificates into evidence because the testimony and exhibits were not relevant or material to any issue in the cause.

Appellees (contestants) pled that the testatrix did not have testamentary capacity, that the will was the product of undue influence exerted by appellant on testatrix, that the testatrix could not have executed the will on the date recited therein, and that the will was not executed in accordance with the formalities and solemnities required by law.

■ Testamentary incapacity implies want of intelligent mental power, while undue influence implies existence of testamentary capacity subjected to and controlled by dominant influence or power. *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963)

The testatrix, who was of foreign ancestry, could not read or write English. Some witnesses testified that she could only speak broken English, whereas, others testified that she spoke and understood English with little trouble. On April 24, 1973, the date the will was allegedly executed, Mrs. Stavinoha was 83 years old.

■ When called as an adverse party, appellant testified that she generally helped her mother take care of business affairs and that on February 6, 1973, she helped her mother fill out a sworn application for food stamps. The application required testatrix to list property owned by her. A certificate of deposit with the Port City State Bank issued in the name of the testatrix, was not listed as an asset. Appellant denied owning or having any knowledge of the certificate of deposit or that the original certificate had been cashed and a new one issued in appellant's name on August 24, 1973. Testamentary capacity requires, in part, that the testator know the nature and extent of his property and the natural objects of his bounty. See *Gayle v. Dixon*, 583 S.W.2d 648 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ). The omission of the certificate of deposit from the list on the application for food stamps was competent evidence that the testatrix did not know the nature and extent of her property shortly before the will was executed. *McNaley v. Sealy*, 122 S.W.2d 330 (Tex.Civ.App.-Austin 1938, writ dism'd). To prove undue influence the contestant must prove (1) the existence and exertion of an influence (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament and (3) the execution of a testament which the maker would not have executed but for such influence. *Rothermel v. Duncan*, supra. This testimony would tend to show that appellant had the confidence of testatrix and was in a position to exert an influence over her.

Mrs. Kmiec of Port City Bank testified that the original certificate of deposit was in the name of the testatrix, that it was cashed by appellant, deposited in the testatrix's checking account and the funds in the checking account were used to buy a new certificate of deposit in the name of appellant. Mrs. Kmiec also testified that appellant could write checks on the checking account of testatrix, a fact which appellant had previously denied when testifying. These were material facts on which appellant could properly be impeached.

The exhibits and the testimony of Mrs. Kmiec were properly admitted into evidence.

Appellant contends that the trial court erred in admitting the testimony of Kathy Steger and Adrion Wilson, employees of the Four Seasons Nursing Home, because the testimony related to events which occurred more than two years after the execution of the will and were too remote to be of any probative value.

The two witnesses testified as to the physical and mental condition of the testatrix after July and September of 1975, over two years after the will was purportedly

executed. Without other testimony of a continuing infirmity, this testimony would be of no probative value. There was, however, testimony that the physical and mental health of the testatrix deteriorated after an illness in 1966, that she had hardening of the arteries, heart trouble and arthritis and that as she aged, her general, physical and mental condition grew worse.

■ The proper inquiry in a will contest on the ground of testamentary capacity is the condition of the testator's mind on the day the will was executed. Only that evidence of incompetency at other times has probative force which demonstrates that the condition persists and has some probability of being the same condition which obtained at the time of the will's making. *Lee v. Lee*, 424 S.W.2d 609 (Tex.1968).

■ After reviewing the entire record, we think it clear that this testimony did not cause the rendition of an improper verdict. T.R.C.P. 434.

■ Appellant, in her first two points of error, claims the trial court erred in overruling her motion for judgment notwithstanding the verdict because (1) the appellees did not prove by a preponderance of the probative evidence that the testatrix was of unsound mind on April 24, 1973 and (2) that the verdict was so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust and clearly wrong.

It would have been proper for the trial court to grant appellant's motion for judgment notwithstanding the verdict only if a directed verdict would have been proper. T.R.C.P. 301. A directed verdict is proper only where there is no evidence to support submission of an issue to the jury. *Associated Sawmills, Inc. v. Peterson*, 366 S.W.2d 844 (Tex.Civ.App.-Dallas 1963, no writ). The two points of error are "no evidence" points.

In the next three points of error, appellant alleges that the trial court erred in granting judgment because (1) the jury's finding was not supported by sufficient probative evidence and (2) the jury's finding was against the great weight and preponderance of the evidence.

A point of error alleging that a court erred in granting judgment is a "no evidence" point. In *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970) the supreme court held that a point of error alleging the trial court erred in "entering judgment" constituted a "no evidence" point. See, *Fox v. Boese*, 566 S.W.2d 682 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ ref'd n. r. e.). In *Clardy v. Dresser Industries, Inc.*, 559 S.W.2d 922 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ) this court held that a point of error alleging that the trial court erred in rendering judgment on a jury verdict constituted a "no evidence" point.

Appellants points of error one through five are "no evidence" points. In evaluating these five points of error, it must be determined whether all the evidence of testamentary incapacity was so remote that it should have been excluded and whether all of the competent evidence of testamentary incapacity amounted to no more than a scintilla of evidence.

In reviewing "no evidence" points, the court will consider only that evidence which is favorable to the jury's finding and will disregard all other evidence. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

Testimony concerning her testamentary capacity follows:

The testatrix was 87 years old when she died on March 5, 1977. In 1966 she was afflicted with shingles and after that time she was unable to live by herself. During the years 1972 and 1973 she lived with her daughter Evelyn Sebesta, her daughter Molly Roberts and her son Joe Stavinoha on a rotating basis because she could not care for herself. She was suffering from hardening of the arteries, arthritis and a heart condition. That during 1972 and 1973 she sometimes could not remember the names of her children and it was difficult for her to carry on conversations with family friends and acquaintances. She owned real property and a certificate of deposit which

she failed to list on a sworn application for food stamps approximately two months before the purported execution of the will. She had a good relationship with her children and stated that she did not need a will. In 1972 and 1973 she had difficulty remembering, she would frequently repeat the same conversation and questions and would sit "starey eyed and vacant" in 1971.

Although most of this testimony was disputed by witnesses testifying on behalf of appellant, it nevertheless is of sufficient probative force to support the jury's finding that the testatrix did not have testamentary capacity on the date the will was executed.

The judgment is affirmed.